UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                         Plaintiff,

v.                                                      Case #14-CR-6092-FPG

                                                      DECISION AND ORDER

DORON FELDMAN,

                                     Defendant.
_____

## INTRODUCTION

Defendant Doron Feldman ("Feldman") pleaded guilty in this case[1] by way of a written plea agreement to committing mail fraud in violation of 18 U.S.C. § 1349. ECF No. 3. He was sentenced principally to a term of 24 months imprisonment, and was ordered to pay restitution of $1.46 million. ECF No. 19. Feldman also agreed to forfeit to the United States three bank accounts as the proceeds of his crime, which totaled just shy of $1 million. *See* ECF No. 3 at 12-14; *see also* ECF Nos. 6, 10, 19. The forfeiture of those assets is not in dispute.

To collect on the restitution order, the government moved the Court to issue a writ of execution for an account held at Sentinel Benefits and Financial Group in Feldman's name. ECF No. 21. The Court issued the Writ (ECF Nos. 22, 23) and Feldman has lodged several objections to the government's efforts to collect his restitution obligation from the Sentinel account. *See* ECF Nos. 28, 36. He also seeks various forms of discovery from the government and from government officials. *See* ECF Nos. 42, 44.

---

[1] Approximately seven months after pleading in this case, Feldman also pleaded guilty to a one count Information in case 15-CR-6016-FPG, which charged him with filing a false tax return in violation of 26 U.S.C. § 7206(1). He was sentenced on the tax charge at the same time he was sentenced on the mail fraud charge, with his sentences to be served concurrently for a total term of 24 months. Feldman was ordered to pay $157,561 in restitution to the Internal Revenue Service in the tax matter. The present motions were also filed in that case, and will be terminated based on this Decision and Order.

1

In short, Feldman argues that (1) as part of his plea agreement, the government agreed that the forfeited bank accounts of almost $1 million would be used to satisfy his restitution obligations, and that the government has breached the plea agreement by not holding up that promise, and (2) that he should be permitted to depose the Assistant United States Attorneys and the case agent assigned to his matter and should receive certain internal government memoranda and letters regarding the forfeited accounts. Feldman requests that the Court vacate the previously issued Writ of Execution regarding the Sentinel account, and seeks an order directing the government to apply the almost $1 million in forfeited funds towards his restitution obligation. ECF No. 36 at 42.

For the following reasons, Feldman's application to vacate the Court's Writ of Execution on the basis that the government breached the plea agreement is DENIED, and Feldman's application to take discovery from representatives of the United States is also DENIED.

## DISCUSSION

There is no shortage of briefing from the parties in this case. Boiled down to the core arguments, Feldman argues that the government breached the plea agreement when they failed "to fulfill the promise the government made as part of the June 24 Plea Agreement to make a meaningful recommendation that the forfeited funds be applied to restitution." ECF No. 36 at 22. More specifically, Feldman argues that:

> As part of his June 24 Plea Agreement, Dr. Feldman agreed to pay restitution in the amount of $1,460,000.00 to the University of Rochester, Department of Anesthesiology (the "University"). (Case No. 6:14-cr-06092-FPG, Doc. No. 3, ¶ 19). The prosecution represented, and the parties understood, that it would make a Restoration Recommendation to the Department of Justice that the seized funds would be applied as restitution paid to the University, and that Dr. Feldman would pay the balance of the restitution to the University prior to sentencing. All parties always expected that the Recommendation would be allowed.

ECF No. 36 at 4.

Because Feldman argues that the government breached the plea agreement, the Court must interpret the terms of that agreement. It is well settled that "[p]lea agreements are interpreted in accordance with contract law principles." *United States v. Colon,* 220 F.3d 48, 51 (2d Cir. 2000). In accordance with those principles, courts "look[ ] to the reasonable understanding of the parties as to the terms of the agreement" in order to determine whether a plea agreement has been breached. *United States v. Riera,* 298 F.3d 128, 133 (2d Cir. 2002). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Torres v. Walker,* 356 F.3d 238, 245 (2d Cir. 2004). "Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by urg[ing] different interpretations in the litigation." *Id.*

Although plea agreements are interpreted in accordance with these general contract principles, the Second Circuit has noted that plea agreements are "unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Padilla,* 186 F.3d 136, 140 (2d Cir.1999). The Second Circuit observed that:

> Several rules of interpretation, consistent with general contract law principles, are suited to the delicate private and public interests that are implicated in plea agreements. First, courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power.
>
> Second, we construe the agreement against a general background understanding of legality. That is, we presume that both parties to the plea agreements contemplated that all promises made were legal, and that the non-contracting "party" who implements the agreement (the district judge) will act legally in executing the agreement.

3

> Finally, courts may apply general fairness principles to invalidate particular terms of a plea agreement.

*Id.*

The Court's role is to "give effect to the intent of the parties *as revealed by the language of their agreement.*" *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000) (Sotomayor, J.)(emphasis added). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 69 (2d Cir. 2005) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)).

In other words, "[t]he words of the plea agreement control, and their meaning 'is measured by objective, not subjective standards." *Mask v. McGinnis*, 252 F.3d 85, 90 (2d Cir. 2001) (citation and quotation omitted).

In reviewing Feldman's plea agreement, paragraph 31 is most relevant to the issue at hand, which is contained within the "Forfeiture Provisions" section of the plea agreement. That paragraph provides that:

> The defendant further agrees that the forfeiture of the aforementioned funds as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. However it is understood by the defendant that the government may, in its discretion, recommend to the Attorney General that any of the forfeited proceeds be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that the United States Attorney's Office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

ECF No. 3 at 14, ¶ 31.

In urging the Court to find that the government breached the plea agreement, Feldman argues that "the prosecutor expressed his 'expectation' that the forfeited funds would be applied

to the restitution if the University as enticement for Dr. Feldman to enter into the plea. He continued with those representations through sentencing." ECF No. 36 at 39. He characterizes his interpretation of the parties' agreement as the "one simple and undisputed fact [that] lies at the core of this case – the government, Dr. Feldman, the University and the Court always expected that 100% of the $992,939.98 Dr. Feldman agreed to forfeit would be used to pay restitution to the University. AUSA Resnick made this clear during the February 18, 2015 sentencing hearing." *Id*. at 26.

Feldman's argument lacks factual support in the record, and lacks support under the applicable standards of law. First, the record. Feldman argues that the prosecutor "expressed his 'expectation' that the forfeited funds would be applied to the restitution if the University as enticement for Dr. Feldman to enter into the plea." However, neither the plea agreement nor the transcript of the plea hearing contain any such representation. In fact, the topic of restoration (which is the Department of Justice's process for seeking the Attorney General's authority to apply funds that have been forfeited to the government to a restitution order in the same case) was never discussed during the plea proceeding. *See* ECF No. 12. Feldman provides no record citation to support his claim that the government made such a promise "as enticement for Dr. Feldman to enter into the plea," and after searching the record, the Court finds no support for this proposition.

Further, the plain language of the plea agreement – which is the embodiment of the parties bargain and agreement – flatly contradicts Feldman's argument.

The language of paragraph 31 is plain and clear. The first sentence states that "The defendant further agrees that the forfeiture of the aforementioned funds as authorized herein shall not be deemed an alteration of the defendant's sentence." In other words, Feldman's forfeiture

of almost $1 million *shall not* – note the parties' choice to use the mandatory language of *shall* – alter the sentence imposed by the Court.

The next sentence, "Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture," flatly rejects the argument now made by Feldman. The import of this sentence is obvious: Feldman is forfeiting assets to the government, and those assets *shall not* – again, the parties chose to use the mandatory term of *shall* – be used to satisfy his restitution obligation.

Then there is the final sentence of that paragraph:

> However it is understood by the defendant that the government may, in its discretion, recommend to the Attorney General that any of the forfeited proceeds be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that the United States Attorney's Office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

What is the government obligated to do under this sentence? Feldman argues that the government made a "promise that a recommendation would be made to AFMLS[2] which would result in an expectation that the forfeiture would be applied to restitution. The expectation of the parties is clear: the forfeited funds would be applied to restitution. That expectation must be honored." ECF No. 36 at 40. The Court finds Feldman's interpretation incompatible with the plain language of the agreement.

Nowhere in this paragraph (or anywhere in the plea agreement) did the government promise that they would make a restoration recommendation. Rather, the plain language of the plea agreement provides that the government "may, in its discretion" make such a

---

[2] "AFMLS" is the Department of Justice's Asset Forfeiture and Money Laundering Section, who has delegated authority from the Attorney General to decide restoration requests.

6

recommendation.  It does not say that the government "will" or "shall" make a recommendation, and that distinction is critical.  Indeed, the fact that the parties chose to use "shall" to define the obligations under the first two sentences of the paragraph, but did not use that language (and instead used "may, in its discretion") in the third sentence indicates that such a choice of language was intentional.  *See, e.g.*, *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 355 (S.D.N.Y. 2013) ("The use of similar but different terms in a single contract strongly implies that the terms are to be accorded different meanings.") (quoting *NFL Enters. LLC v. Comcast Cable Commc'ns*, LLC, 51 A.D.3d 52 (1st Dep't 2008)); *Gov't Employees Ins. Co. v. Saco*, No. 12-CV-5633, 2015 WL 1527611, at *4 (E.D.N.Y. Mar. 31, 2015) ("New York case law has developed a general principle that where a contract uses similar, but not identical, language in different provisions, the use of different terms implies that the terms are to be accorded different meanings.").

To be clear, Feldman focuses a great deal of his arguments on the parties' expectations or beliefs regarding the ultimate disposition of the forfeited assets.  And while it is true that the parties engaged in such discussions on the record, Feldman neglects to mention the crucial (and dispositive) distinction: that none of those statements are contained in the written plea agreement; that none of those statements or beliefs were discussed during the plea colloquy; and that all of the discussions he cites regarding beliefs and expectations occurred *after* the parties entered into the plea agreement.

As discussed below, it would be improper for the Court to consider these statements in interpreting the parties' plea agreement for two related reasons: the plea agreement is unambiguous, and second, the merger clause of the agreement prevents the Court from evaluating parol evidence.

The Court has already commented on the clear language of the plea agreement, and Feldman does not suggest that the language of the plea agreement is ambiguous. Nevertheless, the Court will address the issue since it bears upon Feldman's repeated arguments that are based on matters outside of the plea agreement.

It is well settled that the question of whether a written contract is ambiguous is a question of law for the court. *See, e.g., Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 429 (2d Cir. 1992). Contract language is not ambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Insurance Company of North America,* 46 N.Y.2d 351, 355 (1978)

However, language in a contract "is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms." *Moore v. Kopel*, 237 A.D.2d 124, 125 (1st Dep't 1997); *accord Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)). Rather, "[a]mbiguous language is language that is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000).

As the Second Circuit has stressed, "it is the rare sentence that cannot be read in more than one way if the reader is willing either to suspend the rules of common English usage or ignore the conventions of a given commercial setting. . . . Contorted semanticism must not be permitted to create an issue where none exists." *Wards Co. v. Stamford Ridgeway Assocs.*, 761

F.2d 117, 120 (2d Cir. 1985); *see also Hunt*, 889 F.2d at 1277 ("The court is not required to find the language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning.") (quoting *Bethlehem Steel Co. v. Turner Const. Co.*, 2 N.Y.2d 456, 459 (1957)) (internal quotations and alterations omitted).

Under New York law, the question of ambiguity must be determined "from the face of the agreement, without reference to extrinsic evidence." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (citing *Kass*, 91 N.Y.2d at 566). At the same time, courts consider the words in a contract "not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought." *Kass*, 91 N.Y.2d at 566 (quoting *William C. Atwater & Co., Inc. v. Panama R. Co.*, 246 N.Y. 519, 524 (1927)).

Here, the Court easily concludes that the plea agreement in this case, and paragraph 31 in particular, is unambiguous. As such, any extrinsic evidence of the parties' intentions is irrelevant. There is no reasonable reading of the plea agreement that does not comport with the Court's prior analysis. The parties' agreement provides that the forfeited assets *shall not* be treated as a means of satisfying Feldman's restitution obligation, and only provides that the government *may, in its discretion*, recommend that the forfeited assets be transferred to the victims in this case. There is no plausible reading of this paragraph that supports Feldman's claim that the government promised to make a recommendation to the Department of Justice to use the forfeited funds towards restitution, nor is there any expressed belief or intent that if such a request were made, that it would be granted. To the contrary – the agreement specifically provides that the "United States Attorney's Office has authority only to recommend such relief," but again, the United States did not even obligate itself to make such a recommendation.

9

As it is here, "[i]f a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Torres v. Walker,* 356 F.3d 238, 245 (2d Cir. 2004). "To be sure, extrinsic evidence can illuminate the meaning of ambiguous contract terms." *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 124 (2d Cir. 2013). But when a contract is unambiguous, "the court is not to consider any extrinsic evidence as to the parties' intentions." *See JA Apparel Corp. v. Abboud,* 568 F.3d 390, 397 (2d Cir. 2009). As such, any *post hoc* statements made by the parties that are not contained within the plea agreement are not properly considered by the Court in determining the parties' obligations under the plea agreement.

Similarly, the New York "parol evidence rule forbids proof of an oral agreement that might add to or vary the terms of a written contract that was intended to embody the entire agreement between the parties." *Albany Sav. Bank, FSB v. Halpin,* 117 F.3d 669, 672 (2d Cir. 1997) (internal quotation marks omitted); *see Jarecki v. Shung Moo Louie,* 95 N.Y.2d 665, 669 (2001).

> The New York Court of Appeals described the parol evidence rule as:
>
> A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing. That rule imparts stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses[,] infirmity of memory and the fear that the jury will improperly evaluate the extrinsic evidence.

*W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162 (1990) (internal quotation marks, alterations, and citations omitted).

In short, the parol evidence rule bars the consideration of extrinsic evidence of the meaning of a complete written agreement if the terms of the agreement, considered in isolation, are clear and unambiguous. *Id.* at 162-63. If the terms are ambiguous or contradictory, however, the rule permits the consideration of such evidence not to alter the terms but solely to ascertain the true meaning of the terms. *See generally Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir. 1998); *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir. 1988). In New York, the parol evidence rule is a rule of substantive law rather than one of procedure or evidence. *See Woodling v. Garrett Corp.,* 813 F.2d 543, 552 (2d Cir. 1987).

The Court has already concluded that the plea agreement is clear and unambiguous. In addition, the Court also concludes that the parties' agreement was intended to embody their entire agreement, which also prevents the Court from considering extrinsic or parol evidence.

The final paragraph of the plea agreement, paragraph 33, contains what is commonly referred to as a "merger" or "integration" clause[3]. The paragraph provides that:

> This plea agreement represents the total agreement between the defendant, DORON FELDMAN, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

This language is also clear. It unambiguously states that there is one set of promises, and they are all included in the written plea agreement. There are no other promises, and to the extent that prior oral or written agreements were made, the plea agreement takes over and replaces those agreements. In other words, the plea agreement is the entire embodiment of the

---

[3] New York cases appear to use the terms "merger clause" and "integration clause" interchangeably. *Wall v. CSX Transp., Inc.,* 471 F.3d 410, 415 n.4 (2d Cir. 2006), citing *Primex Int'l Corp. v. Wal–Mart Stores, Inc.,* 89 N.Y.2d 594, 596 (1997) ("In addition, the 1990 Agreement contained a general merger or integration clause.")

parties' agreement. This paragraph is important, since "[o]rdinarily, a merger clause provision indicates that the subject agreement is completely integrated, and parol evidence is precluded from altering or interpreting the agreement" *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 21 (2d Cir. 1997). For this additional reason, Feldman's arguments about matters that occurred outside of the plea agreement are also unavailing.

Feldman is correct that as a general principle, "all elements of the plea agreement need not be in writing. Just as contracts are not invalid simply because they are made orally, the same is true of plea agreements." ECF No. 36 at 24. But that argument ignores the merger clause generally, and specifically ignores his agreement that no other promises exist outside of the plea agreement, and any prior agreements – even oral agreements – are superseded by the written plea agreement.

To summarize, the Court finds that: (1) the plea agreement is clear and unambiguous; (2) that no promise exists in the plea agreement that would require the government to request that the forfeited funds be applied to Feldman's restitution obligation; and (3) that the government did not breach the plea agreement. For all these reasons, Feldman's motion (ECF No. 28) to vacate the writ of garnishment as premised on an alleged breach of the plea agreement is DENIED.

In a separate motion (ECF No. 42), Feldman seeks discovery, including taking the depositions of the Assistant United States Attorneys and government agents involved in this case, and paper discovery regarding the restoration recommendation made by the government to the Department of Justice and the ultimate denial by Justice Department officials in Washington, D.C. to deny the government's restoration request. That application is DENIED, since the issue Feldman seeks to explore through discovery – whether the government knew of other non-

forfeited assets of Feldman's prior to the time it made a restoration recommendation – is irrelevant, since under the terms of the agreement, the government was not obligated to make such a recommendation in the first place.

Finally, Feldman has also sought to vacate the writ of execution on a separate ground, arguing that the Sentinel account is exempt or protected from the government's collection efforts. The Court granted the parties' request to delay briefing of that issue until after the Court resolved Feldman's discovery application. With the discovery issue now resolved, Feldman's brief is due by July 28, 2017, and the government may respond by August 4, 2017. The parties' briefs are limited to 15 pages, and are limited to the single issue of whether the Sentinel account is exempt or otherwise protected from the writ of execution.

## CONCLUSION

Feldman's motion (ECF No. 28) to vacate the writ of garnishment as premised on an alleged breach of the plea agreement is DENIED, and Feldman's motion (ECF No. 42) for discovery is DENIED. The parties may brief the single remaining issue of whether the Sentinel account is exempt or otherwise protected from the writ of execution, with Feldman's brief due by July 28, 2017, and the government's response brief due by August 4, 2017.

IT IS SO ORDERED.

DATED:   July 17, 2017
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court